CHAMBERLAIN *v.* THE TORGORM.

*(District Court, D. South Carolina.* May 6, 1891.)

1. ADMIRALTY—BILL OF LADING—LIBEL—PLEADING.
　　Where a railroad company libeled a steam-ship, alleging that it had delivered to it certain bales of cotton for transportation to Bremen under customary bills of lading, which cotton had been received by libelant at Atlanta under through bills of lading to Bremen, and that the master took the cotton, but refused to deliver to libelant any bill of lading therefor except one containing a provision that it should be subject to the conditions of a charter-party to which libelant is not a party, and by which it is not bound, and also refused to redeliver the cotton, the action is in no sense founded on the through bill of lading under which libelant first received the cotton, and the libel was not insufficient because it failed to set it out.

2. SAME.
　　Nor can the libelant be required to set out the terms of bills of lading expressed to be subjected to the conditions of the charter-party, which were tendered by the libelee, since it had not received and could not be expected to know their provisions.

3. SAME.
　　The through bills of lading under which libelant took the cotton provided that it should be delivered to the libelee steam-ship for transportation to Bremen under "customary bills of lading." *Held,* by this language it was intended to designate not a particular instrument, but a class of instruments whose tenor is susceptible of proof, and that it is no objection to the libel that it failed to set out such bill of lading, or have a copy thereof annexed.

In Admiralty.　On exceptions to libel.
*I. N. Nathans* and *Mitchell & Smith,* for libelant.
*I. K. Bryan,* for claimant.

SIMONTON, J.　The libel, after stating that libelant is the receiver of the South Carolina Railway Company, alleges that he delivered to the steam-ship Torgorm 52 bales of cotton, marked "Sa-Sa," to be carried from the port of Charleston to Bremen, under the usual and customary bills of lading, to be issued by said steam-ship to libelant; that the cotton had been transferred over the road of the South Carolina Railway from Atlanta, Ga., under what are known as "through bills of lading," and to be delivered by libelant to said steam-ship for transportation to Bremen under the customary bills of lading to be issued by said steam-ship; that the steam-ship received the cotton, and is about to depart without giving libelant proper bills of lading, and in lieu thereof tenders bills with the words written thereon, "subject to the conditions of a charter-party," to which libelant is not a party, and by which he is in no manner bound; that he has demanded proper bills of lading or redelivery of cotton to him; that the master has refused both; and fixes his damage at $3,000.　The master has intervened and filed claim for the owners, and makes exceptions to the libel for insufficiency and want of certainty and definitiveness in the allegations thereof:

1. Because it fails to set forth and allege the terms of the said alleged through bill of lading from Atlanta to Bremen, mentioned in paragraph 2 of said libel, and fails to attach thereto a copy of the same as an exhibit to said libel.

*As to the First Exception.* Whenever a suit is founded upon a written instrument, and it is not set out in full in the libel, the libelant should attach to the libel a copy of the instrument. 2 Conk. Adm. p. 485 ; *Card* v. *Hines*, 33 Fed. Rep. 189. Were this not so, the respondent, in preparing his defense, would be made dependent upon the construction given by his adversary to the instrument, or upon such parts only of it as it suited the other party to disclose. If this suit was founded on the through bills of lading, this rule would be enforced now. The libel is based upon the refusal of the ship to give customary bills of lading for cargo delivered to it for transportation. The contract upon which libelant relies is that arising out of the delivery of cargo. In order to show his right to bring the action he does not claim as owner, but alleges a qualified property in him as a common carrier. He is a carrier, not by delivery of cotton to him by its owner, but by virtue of a through bill of lading from Atlanta, Ga., from another carrier. This through bill of lading can only be used to show his title. It cannot be used to show a contract between him and the ship. He alleges that such contract arose from the fact of delivery. This being so, it would simply incumber the record to require the copy of the through bill of lading as an exhibit. This exception is overruled.

2. Because it fails to set forth and allege the terms of the said alleged bills of lading tendered, mentioned in paragraph 3 of said libel, and fails to attach thereto a copy of the same as an exhibit to said libel.

*As to the Second Exception.* This is founded on an error. The terms of the objectionable bill of lading, or, rather, the objectionable phrase in the bill of lading, is set out in the libel: "The words written thereon, 'subject to the conditions of a charter-party,' to which libelant is in no manner a party, and by which he is in no manner bound." Libelant cannot be expected to annex a copy of this, because he did not receive it.

3. Because it fails to set forth the terms of the alleged "customary bill of lading" mentioned in the fourth paragraph of said libel, and fails to annex a copy of the same as an exhibit to said libel.

*As to the Third Exception.* When libelant uses the term "customary bills of lading" he refers to no particular instrument, but to a class of instruments, whose tenor must be susceptible of proof. There is no necessity to annex a precedent of that class of instruments. The distinction is this: The cause of action, if in writing, should be set forth in full, either in the libel or in an exhibit to the libel. The latter is the better practice. Matters of evidence to sustain the cause of action need not be attached as exhibits, although they be written instruments. The exceptions are disallowed.